UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRIAN REINE | CIVIL ACTION |
| VERSUS | NO. 25-1369 |
| COINBASE, INC., BRIAN ARMSTRONG | SECTION "R" (1) |

## ORDER AND REASONS

Defendants Coinbase, Inc. ("Coinbase") and Brian Armstrong move to compel arbitration and stay the proceeding.[1] Plaintiff does not oppose the motion.[2] For the following reasons, the Court grants the motion.

### I. BACKGROUND

Coinbase is a digital currency exchange.[3] Coinbase users can, among other things, buy, sell, transfer, and store digital currencies like Bitcoin.[4] In December of 2021, Reine created a Coinbase account.[5] Thereafter he stored assets, including Bitcoin, in his Web3 wallet, a wallet that was supported by

---

[1]   R. Doc. 6.
[2]   R. Doc. 9.
[3]   R. Doc. 6-2 at 1, ¶ 2.
[4]   *Id.*
[5]   R. Doc. 9 at 1.

Coinbase.[6] He alleges that following Coinbase's announcement that it would discontinue support of Web3, he made repeated attempts to move 0.218 Bitcoin from that wallet.[7] Reine alleges that defendants failed to effectively resolve or assist with this, and, as a result, he cannot access 0.218 Bitcoin.[8] He further alleges that Bitcoin was stolen from his Coinbase account and that the scammers who stole it exploited vulnerabilities in Coinbase's systems to do so.[9]

In June 2025, Reine sued Coinbase and Brian Armstrong, Coinbase's CEO, in state court for breach of contract, negligence, and violation of the Louisiana Unfair Trade Practices Act.[10] In July 2025, defendants removed this action to federal court, asserting diversity jurisdiction.[11]

Defendants now bring a motion to compel arbitration and stay the proceeding.[12] They assert that plaintiff is bound to arbitrate his claims under a binding arbitration agreement in Coinbase's User Agreement.[13] Before Coinbase users can make deposits into their Coinbase accounts, they must

---

[6]   R. Doc. 1-1 at 1.
[7]   *Id.* at 2.
[8]   *Id.*
[9]   *Id.* at 2-4.
[10]  *Id.* at 5-6.
[11]  R. Doc. 1.
[12]  R. Doc. 6.
[13]  R. Doc. 6-1.

agree to the User Agreement.[14] The User Agreement at the time of plaintiff's account creation was the 2021 version.[15] In 2021, at the end of the account creation process users had to check a box certifying that they are over 18 years of age and that they agreed to the User Agreement and the Privacy Policy.[16] The User Agreement and Privacy Policy were hyperlinked to the account creation page such that, if clicked on, a full copy of each would be presented to the user.[17] Coinbase contends that its records reflect that Reine did check the certification box.[18]

In January 2022, Coinbase updated its User Agreement and notified customers via email.[19] The email summarized changes to the User Agreement and included the following text: "You can read the entire agreement here."[20] The text "entire agreement here" was displayed as a hyperlink, that, if clicked on, would provide a full copy of the 2022 version of the User Agreement.[21] Beginning on February 3, 2022, Coinbase directed users who had not yet accepted the 2022 version of the User Agreement to a

---

14    R. Doc. 6-2 at 2, ¶ 5.
15    *Id.* at 2-3, ¶ 7.
16    R. Doc. 6-4, Exhibit B.
17    R. Doc. 6-2 at 3, ¶ 8.
18    *Id.* at 2-3, ¶ 7.
19    *Id.* at 4, ¶ 10.
20    *Id.*
21    *Id.*

3

landing page directing them to "review and accept your updated terms and conditions to continue using your Coinbase account."[22] The full agreement was viewable in a scroll box.[23] Below it was a button labeled "Accept terms."[24] Coinbase's records show that Reine accepted the 2022 User Agreement on February 6, 2022.[25]

The 2022 User Agreement contained a section titled "Arbitration Agreement" that states:

> Subject to the terms of this Arbitration Agreement, you and Coinbase agree that any dispute, claim, disagreements arising out of or relating in any way to your access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a "Dispute") will be resolved by binding arbitration, rather than in court. . .[26]

The Arbitration Agreement further provides that the "Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, will govern the interpretation and enforcement of this Arbitration Agreement and any arbitration proceedings."[27]

---

[22]   *Id.* at ¶ 11.
[23]   *Id.*
[24]   *Id.*
[25]   *Id.* at 5, ¶ 13.
[26]   R. Doc. 6-7, Exhibit E.
[27]   *Id.*

4

Based on the Arbitration Agreement, Coinbase and Armstrong assert that Reine is bound to arbitrate his claims.[28] Plaintiff responds that, following consultation of counsel, he does not oppose the entry of an order staying the case while the parties proceed with arbitration.[29]

The Court considers the motion below.

## II. LEGAL STANDARD

There is a strong federal policy in favor of arbitration. *See Safer v. Nelson Fin. Grp. Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). The Supreme Court has directed courts to "'rigorously enforce' arbitration agreements . . . ." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). "[D]istrict courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218. Under § 3 of the Federal Arbitration Act, if a claim in a lawsuit is "referable to arbitration under an [arbitration] agreement," the district court "shall on application of one of the parties stay the trial of the action" pending arbitration. 9 U.S.C. § 3. Courts grant such a stay "unless it can be said with

---

[28]    R. Doc 6-1.
[29]    R. Doc. 9 at 2.

5

positive assurance that the arbitration clause is not susceptible of an interpretation that would cover the dispute at issue." *Safer*, 422 F.3d at 294 (cleaned up).

Ordinarily, to decide on a motion to compel arbitration, the Court must determine (1) whether there is a valid agreement to arbitrate the claims and (2) whether the dispute falls within the scope of that agreement. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (per curiam). The Court then considers "whether any federal statute or policy renders the claims nonarbitrable." *JP Morgan & Chase Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). However, when the arbitration agreement contains a delegation clause, the Court simply analyzes whether there is a valid agreement, and if so, whether there is "clear and unmistakable evidence" that the parties intended to arbitrate the arbitrability issue. *See Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019). If the Court determines that the parties have agreed to arbitrate the dispute in question, it then "determine[s] 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

6

## III. DISCUSSION

Here, the Arbitration Agreements contain delegation clauses. Specifically, the 2021 and 2022 User Agreements provide that an arbitrator is to resolve questions of arbitrability.[30] Additionally, the Agreements incorporate the American Arbitration Association rules, which provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, with respect to the existence, scope, or validity of the agreement." Am. Arbitration Ass'n, *Commercial Arbitration Rules and Mediation Procedures* 14 (2022).

Because the parties' agreement contains a delegation clause, the Court conducts the two-part delegation clause analysis. The Court first looks to whether there is a valid agreement and whether there is "clear and unmistakable evidence" that the parties intended to arbitrate the arbitrability issue.

The validity of the agreement is governed by state law contract principles. *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014). The User Agreements here contain choice-of-law provisions directing that California law shall apply in any disputes concerning the parties'

---

[30]   R. Docs. 6-6, 6-7.

agreement.[31]  Federal courts sitting in diversity apply the choice-of-law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-98 (1941).  Under Louisiana law, contractual choice-of-law provisions are presumed valid, unless the chosen law "contravenes the public policy" of the state whose law would otherwise apply.  *See* La. Civ. Code art. 3540; *see also Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. App. 1 Cir. 2012) ("A choice of law provision in a contract is presumed valid until it is proved invalid.").  Here, neither party argues that the choice-of-law provisions in the contracts are invalid.

Under California law, "[m]utual manifestation of assent . . . is the touchstone of contract."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  Here, plaintiff does not dispute that he agreed to arbitrate all disputes relating to his use of or access to his Coinbase account.  Nor does he dispute that he took an affirmative action (clicking the check box) to agree to the terms of the User Agreements.  Accordingly, the Court finds that there was manifestation of assent.[32]  *See also Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1084-85 ("On the internet a manifestation of

---

[31] R. Doc. 6-6 at 16; R. Doc. 6-7.
[32] This result would not be different under Louisiana Law, which requires (1) capacity of the parties; (2) mutual assent; (3) object; and (4) lawful purpose.  *See* La. Civ. Code Arts. 1918, 1927, 1966 & 1971.

8

assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons. . . . Clickwrap agreements have been held to manifest assent, even on consumers who did not read them. . . ." (cleaned up)). The Court also finds that the language of the delegation clauses make "clear and unmistakable evidence" that the parties intended to arbitrate the issue of arbitrability.[33]

The Court must then determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). The parties have not argued that any such constraints exist, and the Court cannot discern of any. The Court therefore finds no such legal constraints here. *See Webb*, 89 F.3d at 258.

Because there is a valid arbitration agreement with "clear and unmistakable evidence" that the parties intended to arbitrate any questions of arbitrability, and there are no legal constraints foreclosing arbitration, plaintiff's claims are referable to arbitration. The Court stays the action pending arbitration. 9 U.S.C. § 3.

---

[33] R. Docs. 6-6, 6-7.

9

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to compel arbitration and stay the proceeding.  This case shall be STAYED AND ADMINISTRATIVELY CLOSED pending completion of the arbitration.

New Orleans, Louisiana, this __8th__ day of September, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE